UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DANIEL J. KROCK,                          :
                Plaintiff,      :       No. 5:14-cv-3683
     v.                                   :
                                            :
THE UNITED STATES OF AMERICA,  :
                Defendant.     :
_____

**MEMORANDUM**

Defendant's Motion to Preclude Plaintiff's Expert, Dr. Devandra K. Amin, From Testifying, ECF No. 19- Granted in Part, Denied in Part

**Joseph F. Leeson, Jr.**                                                                 **July 31, 2015**
**United States District Judge**

I.   **Introduction – Factual Background**

On June 13, 2014, Plaintiff, a Veteran, filed a Complaint against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. Compl., ECF No. 1. Prior to initiating this action, Plaintiff exhausted administrative remedies by filing an FTCA claim with the Department of Veteran's Affairs, which was denied. Compl. ¶¶ 2-4. The Complaint alleges medical and professional negligence arising from Plaintiff's treatment at the VA Outpatient Clinic[1] in Allentown, Pennsylvania ("VA Clinic"), between June 19, 2012, and September 12, 2012. Compl. ¶¶ 2-24. Plaintiff filed a certificate of merit on June 26, 2014. ECF No. 3.

---

[1] The VA Clinic in Allentown is a community based outpatient clinic operated by the United States Department of Veteran's Affairs, Veteran's Health Administration. See http://www.va.gov/directory/guide/facility.asp?ID=5291&map=1&dnum=1&stateid=PA (last accessed July 28, 2015).

1

Plaintiff alleges that on June 19, 2012, he was seen by Dr. Mary Robinson, a podiatrist, at the VA Clinic for a check-up concerning his swollen feet. Compl. ¶¶ 8, 21.  On June 26, 2012, Plaintiff treated with Dr. David Whitson, a general physician, with complaints of shortness of breath, swelling in his feet, and problems sleeping. Compl. ¶ 9.  Plaintiff inquired whether he had a heart condition and was assured that he did not. Id.  Dr. Whitson prescribed a diuretic due to fluid retention. Compl. ¶ 10.

Plaintiff alleges that he spoke with Dr. Whitson on the telephone on July 2, 2012, informing Dr. Whitson that he was still filling up with fluid and had swollen feet. Compl. ¶ 11.  The Complaint alleges that Dr. Whitson made a note in the medical records to order laboratory tests and to follow-up next week. Id.  When Plaintiff met with Dr. Whitson on July 9, 2012, he had gained weight, had gross swelling in his lower extremities, and was weeping water through his skin. Compl. ¶ 12.  Plaintiff alleges that he also complained of shortness of breath and lack of energy. Id.  The Complaint states that Dr. Whitson attributed Plaintiff's condition to the hot, humid weather, and to carrying extra body weight. Id.  Dr. Whitson prescribed a water pill, instructed Plaintiff to drink eight to ten glasses of water per day, intended to check in with Plaintiff in seven to ten days, and planned a repeat visit in September, 2012. Compl. ¶¶ 12, 15.

On July 19, 2012, Plaintiff presented at the VA Clinic for a yearly meter clinic and a nurse noted the swelling in his feet and legs. Compl. ¶ 16.  He also had some early lesions and was weeping fluid. Compl. ¶ 17.  Consequently, Dr. Whitson saw Plaintiff at an unscheduled visit the same day. Compl. ¶¶ 11-17.  Plaintiff alleges that Dr. Whitson assessed chronic venus insufficiency and congestive heart failure, but did not include the diagnosis in his impression or plan and did not hospitalize Plaintiff. Compl. ¶ 17.  Instead, Dr. Whitson increased the dosage of the previously prescribed water pill. Id.

Plaintiff alleges that he telephoned Dr. Whitson on or about July 27, 2012, regarding a bulging disc and complained about fatigue, shortness of breath, and fluid retention. Compl. ¶ 18. Plaintiff alleges that Dr. Whitson called him on or about July 30, 2012, because of his elevated sugar levels, and Plaintiff again complained about fatigue and light-headedness. Compl. ¶ 19.

On August 2, 2012, Dr. Whitson treated Plaintiff at the VA Clinic and reduced the dosage of the water pill. Compl. ¶ 20. Plaintiff alleges that he presented with the same conditions and had lost 24 pounds in water weight. Id. The Complaint states that Dr. Whitson did not schedule any tests, did not note a potential diagnosis of congestive heart failure, and advised Plaintiff to follow-up in three months. Id.

On August 14, 2012, Plaintiff saw Dr. Robinson, a podiatrist, for a foot check-up. Compl. ¶ 21. Dr. Robinson inquired as to whether Plaintiff had seen Dr. Whitson regarding the swelling. Id.

Plaintiff alleges that on September 5, 2012, he called Dr. Whitson about his fluid retention, lack of appetite, fatigue, and shortness of breath. Compl. ¶ 22. Dr. Whitson allegedly opined that Plaintiff's condition was due to his salt intake, and increased his water pill dosage. Id. The Complaint alleges that between September 7, 2012, and September 12, 2012, Plaintiff called the VA Clinic and left messages 11 times regarding his worsening condition. Compl. ¶ 23. Plaintiff alleges that he reported increased swelling and fluid retention to such a degree that he was in significant pain and had difficulty walking. Id. Plaintiff alleges that when someone from the VA Clinic finally returned his call on September 12, 2012, Plaintiff advised that he was going to the emergency room. Id.

On September 12, 2012, Plaintiff went to the VA Hospital in Wilkes-Barre and was immediately admitted and diagnosed with, inter alia, heart failure. Compl. ¶ 24. Plaintiff alleges

that the doctors determined that his body was full of water and his heart was pumping at less than 20% normal capacity. Compl. ¶ 25. The Complaint avers that Plaintiff coded twice and suffered heart attacks during his admission. Id. Plaintiff alleges that the initial assessment was that water had built up in his legs and gonads over the previous three weeks, and that his testicles were the size of cantaloupes, bilaterally. Id. Plaintiff claims that as a direct and proximate result of the failure to diagnose congestive heart failure, he suffered permanent heart damage and developed an enlarged heart. Compl. ¶ 27. Plaintiff alleges that as a result of the three-month delay in diagnosis, his only remaining remedy is a heart transplant, but that he is not eligible due to pre-existing conditions. Compl. ¶¶ 27-28. Plaintiff alleges that he will die as a result of Defendant's medical and professional negligence. Compl. ¶ 28.

Defendant filed an Answer to the Complaint on August 15, 2014. Answer, ECF No. 6. On May 15, 2015, Defendant filed a Motion to Preclude Plaintiff's Expert, Dr. Devandra K. Amin, from Testifying as an expert witness regarding the standard of care and causation. Mot., ECF No. 19. Defendant argues that Dr. Amin does not satisfy the standards for testifying as an expert witness under either federal or Pennsylvania law. Mot. 1 (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); 40 P.S. § 1303.512 (2014)). Plaintiff filed a response in opposition on May 29, 2015, Resp. ECF No. 25, and Defendant filed a reply brief on June 3, 2015, Reply, ECF No. 28. This Court held a hearing[2] on the motion on July 22, 2015. For the reasons set forth below, Defendant's Motion will be granted in part and denied in part.

---

[2] See Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (3d Cir. 1999) ("We have long stressed the importance of in limine hearings under Rule 104(a) in making the reliability determination required under Rule 702 and Daubert. Compare United States v. Downing, 753 F.2d 1224, 1241 (3d Cir. 1985) ('It would appear that the most efficient procedure that the district court can use in making the reliability determination is an in limine hearing.')."); Qeisi v. Patel, No. 02-8211, 2007 U.S. Dist. LEXIS 9895, at *8-9 (E.D. Pa. Feb. 9, 2007) ("No hearing has been held on any

## II.     Standard of Review – Admissibility of Expert Witness Testimony in a Medical Malpractice Case

"[L]iability of the United States under the FTCA is determined by the law of the state where the allegedly tortious act occurred." DeJesus v. VA, 479 F.3d 271, 279 (3d Cir. 2007) (citing 28 U.S.C. § 2647).  "To make a successful medical malpractice claim under Pennsylvania law, the plaintiff must plead and prove the usual elements of negligence: a) an applicable standard of care; b) breach of that standard of care by the defendant; c) causation; and d) damages." Carter v. United States, No. 11-6669, 2014 U.S. Dist. LEXIS 15956, at *11 (E.D. Pa. Feb. 7, 2014) (citing Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003)).  In a medical malpractice case, "the plaintiff is 'also required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'" Keating v. Coatesville VA Med. Ctr. (Estate of Keating), 498 Fed. Appx. 181, 184 (3d Cir. 2012) (quoting Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990)).

"Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." Kannankeril v. Terminix Int'l, 128 F.3d 802, 806 (3d Cir. 1997) (citing Daubert, 509 U.S. at 589).  "The Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact.'" Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 780 (3d Cir. 1996) (quoting DeLuca v. Merrell Dow Pharm., Inc., 911 F.2d 941, 956 (3d Cir. 1990)).  "Exclusion of expert testimony is the exception rather than

---

of these motions, the Court having determined that the papers submitted are sufficient for purposes of the Court's ruling upon these challenges.").

the rule because 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Keller v. Feasterville Family Health Care Ctr., 557 F. Supp. 2d 671, 674 (E.D. Pa. 2008) (quoting Fed. R. Evid. 702 (advisory committee notes) (citing Daubert, 509 U.S. at 595)).  "When there is a proper challenge to the admissibility of evidence, such as a motion to exclude expert testimony, the party offering the expert bears the burden of establishing the admissibility of such expert's testimony and report by a preponderance of the evidence." Steven J. Inc. ex rel. Fenton v. Landmark Am. Ins. Co., No. 14-474, 2015 U.S. Dist. LEXIS 80278, at *8 (M.D. Pa. June 22, 2015).  See also Keller, 557 F. Supp. 2d at 674-75; Qeisi, 2007 U.S. Dist. LEXIS 9895 at *12.

"Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." Kannankeril, 128 F.3d at 806 (citing Holbrook, 80 F.3d at 780).  As to witness competency, Rule 601 of the Federal Rules of Evidence provides that "...in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Ev. 601.  "Section 512 of MCARE is a rule of witness competency, not a rule of expert qualification." Keller, 557 F. Supp. 2d at 684 n.3 (citing 40 P.S. § 1303.512(a)).  Section 512 of MCARE is therefore applied to a Pennsylvania medical malpractice case in the federal courts under Rule 601.  See Miville v. Abington Mem'l Hosp., 377 F. Supp. 2d 488, 493 (E.D. Pa. 2005).

**III.   Analysis**

This Court must first determine whether Dr. Amin is qualified to testify as an expert witness under Federal Rule of Evidence 702.  If he satisfies the requirements of Rule 702, Dr.

Amin must also meet the requirements of section 512 of MCARE in order to be competent to testify, specifically against Dr. Whitson.

### A. Dr. Amin's Qualifications to Testify as to Causation

Defendant asserts that Dr. Amin's proposed testimony on the issue of causation is barred by Federal Rule of Evidence 702 and Daubert because it does not have a reliable scientific basis. Mot. 8. Defendant argues that in addressing causation, Dr. Amin's conclusion[3] is based on the statement "[i]t stands to reason...," which is the type of unsupported speculation disallowed by Daubert. Mot. 9. Defendant complains that Dr. Amin's report fails to cite any scientific study or medical texts to support his conclusion. Id.

Plaintiff responds that Dr. Amin's CV demonstrates a wealth of scientific, technical, and specialized knowledge in cardiology that should aid the Court in issues regarding congestive

---

[3] On March 26, 2015, Dr. Devendra K. Amin authored a report, after conducting a clinical exam and reviewing Plaintiff's complete medical records, concluding that Plaintiff has "NYHA class ¾ congestive heart failure." Report, ECF No. 19, Ex. A. Dr. Amin determines that Plaintiff has "an ischemic dilated cardiomyopathy resulting from coronary artery disease and myocardial infarction as a result of multiple risk factors including but not limited to diabetes, hypertension obesity and dyslipidemia." Id. Dr. Amin finds that an opportunity for diagnosis was first missed in the VA System in 2011 when Plaintiff presented for treatment for diabetes and hypertension. Id. Dr. Amin opines that the failure to order a stress test, at a minimum, violated the "basic standard of care." Id. Dr. Amin concludes that the second opportunity for diagnosis and prevention occurred in 2012, when Plaintiff treated with Dr. Robinson at the VA Clinic. Id. Dr. Amin's report then addresses the treatment provided by Dr. Whitson beginning on June 26, 2012. Id. Dr. Amin discusses Plaintiff's complaints to Dr. Whitson and the diagnosis and treatment plan. Id. Dr. Amin opines that Dr. Whitson violated the standard of care, specifying which actions and/or inactions violated the standard of care and which medical tests should have been ordered based on Plaintiff's symptoms. Id. Dr. Amin determines that Plaintiff eventually received proper treatment after he was admitted to the Medical Center in Wilkes-Barre, Pennsylvania on September 12, 2012, and discusses the medical findings at that time. Id. Dr. Amin opines that Plaintiff's longevity is "markedly reduced" and that the misevaluation/ misdiagnosis compromised Plaintiff's "functional capacity and life expectancy." Id. Dr. Amin states: "It stands to reasons therefore that had preventative measures been undertaken even as far back as 2011, any underlying coronary disease would have been detected and treated preventing myocardial infarction and subsequent CHF." Id. The report concludes: "All of the above opinions are stated with reasonable medical certainty and fall within my expertise and qualifications as a Board Certified Cardiologist." Id.

7

heart failure. Resp. 3, 5. Plaintiff argues that Dr. Amin's report is the product of reliable principles and methods because review of Plaintiff's complete medical records and an analysis of the care is the only proper scientific method applicable. Id. Plaintiff notes that Dr. Amin refers to specific medical findings in reaching his conclusions. Resp. 2-3. Further, Plaintiff contends that pursuant to Federal Rule of Evidence 705,[4] an expert does not have to give reasons for his opinion prior to cross-examination. Resp. 5-6.

Rule 702 of the Federal Rules of Evidence dictates that an expert witness may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Ev. 702. "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). "The first requirement, whether the witness is qualified as an expert, has been interpreted liberally to encompass 'a broad range of knowledge, skills, and training.'" ID Sec. Sys. Can., Inc. v. Checkpoint Sys., 198 F. Supp. 2d 598, 602 (E.D. Pa. 2002) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).

Under the second restriction, an expert's opinion must "be reliable, or based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Ellison v. United States, 753 F. Supp. 2d 468, 475 (E.D. Pa. 2010) (internal quotations omitted). "[T]he inquiry as to whether a particular scientific technique or method is reliable is a flexible

---

[4] "Unless the court orders otherwise, an expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination." Fed. R. Ev. 705.

one." In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742. The United States Supreme Court has advised the district courts to consider:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Id. at 742 n.8 (citing Daubert, 509 U.S. 579 (1993); Downing, 753 F.2d at 1237). "However, the factors stated above are 'simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted.'" Qeisi, 2007 U.S. Dist. LEXIS 9895 at *13-14 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 152 (3d Cir. 1999)). "[T]he relevant reliability concerns may focus upon personal knowledge or experience," instead of "scientific foundations." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).

"The final prong requires that the expert testimony 'fit' by assisting the trier of fact." ID Sec. Sys. Can., Inc., 198 F. Supp. 2d at 602-03 (citing Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000)). "Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" Oddi, 234 F.3d at 145 (quoting In re Paoli, 35 F.3d at 743)). The standard is not high, id., and "the test does not require that the opinion have 'the best foundation' or be 'demonstrably correct,' but only that the 'particular opinion is based on valid reasoning and reliable methodology.'" ID Sec. Sys. Can., Inc., 198 F. Supp. 2d at 603 (citing Oddi, 234 F.3d at 146).

In the instant action, Plaintiff offers Dr. Amin as an expert witness based on his knowledge, skills, and training in the fields of internal medicine and cardiology. Dr. Amin was first certified in internal medicine in 1980, and subsequently received certifications, including

9

sub-specialty certifications in cardiovascular diseases, NASPE, and Nuclear Cardiology, in 1983, 1988, and 2014.  Mot, Ex. B, Dr. Amin's Curriculum Vitae ("CV").[5]  Between 1980 and 1993, Dr. Amin held six academic positions, and has been on the faculty at UCLA School of Medicine since 1984.  Id.  He has been the Attending Cardiologist at eleven different hospitals between 1982 to present day.  Id.  Dr. Amin also held two other hospital appointments, and has advanced medical training and specialty certifications.  Id.  Accordingly, this Court finds that Dr. Amin is qualified to testify as an expert witness.  See ID Sec. Sys. Can., Inc., 198 F. Supp. 2d at 602.

As to reliability, Dr. Amin's opinion, stated with reasonable degree of medical certainty, was reached after he performed a clinical exam of Plaintiff and reviewed his complete medical records.  Report 1.  The Third Circuit Court of Appeals has held that "a doctor only needs one reliable source of information showing that the plaintiff is ill and either a physical examination or medical records will suffice -- but the doctor does need at least one of these sources."  In re Paoli, 35 F.3d at 762.  Here, Dr. Amin, who has extensive knowledge and experience in cardiology, had both.  Consequently, his opinion is reliable.  See Taylor v. Danek Med., Inc., No. 95-7232, 1999 U.S. Dist. LEXIS 6662, at *6-7 (E.D. Pa. May 10, 1999) (determining that the expert's opinion was reliable under Rule 702 because he "formed his opinions after examining [the plaintiff's] medical records").

Finally, this Court concludes that Dr. Amin's testimony will assist the trier of fact.  In his report, Dr. Amin identifies Plaintiff's risk factors and discusses what medical conditions would explain Plaintiff's symptoms.  Report 2.  The report also discusses the reasons why Dr. Whitson's working diagnosis was incorrect and which specific tests should have been ordered.

---

[5] Dr. Amin's testimony at the evidentiary hearing on July 22, 2015, was consistent with his CV.

Report 2. Dr. Amin's opinion is therefore based on "valid reasoning and reliable methodology." See Oddi, 234 F.3d at 146.

Defendant's Motion to preclude Dr. Amin from testifying under Rule 702 and Daubert is denied.

### B. *Dr. Amin's Competency to Testify as to the Standard of Care*

Defendant argues that MCARE precludes Dr. Amin, whose opinion is based on his "expertise and qualifications as a Board Certified Cardiologist," from testifying as to the standard of care for Dr. Whitson, a board certified doctor in family practice, and for Dr. Benek and Dr. Robinson, podiatrists. Mot. 4. Defendant contends that MCARE requires experts of the same specialty to testify concerning the standard of care. Mot. 7. Defendant complains that Dr. Amin does not identify the standard of care he applied in issuing his report, nor does he state that he is familiar with the standards of care for a podiatrist and family care physician, nor does he suggest that the standard of care for a cardiologist is similar. Mot. 5-7.

In response, Plaintiff argues that Dr. Amin meets the MCARE requirements because he has an unrestricted physician's license in multiple states, is actively practicing medicine, specifically cardiology, and is currently teaching. Resp. 2. Plaintiff alleges that both Dr. Whitson and Dr. Amin are board certified by the same internal medicine board and that, at a minimum, the standards of care applicable to their practices are substantially similar. Resp. 3, 7. Plaintiff suggests that Defendant attempts to mislead the Court by focusing on Dr. Whitson's family care certification instead of his internal medicine certification. Id.

MCARE provides:

> (a) GENERAL RULE.-- No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and

11

experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

   (b) MEDICAL TESTIMONY.-- An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

   (1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

   (2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

   (c) STANDARD OF CARE.-- In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

   (1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

   (2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

   (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

   (d) CARE OUTSIDE SPECIALTY.-- A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

   (1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

   (2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

>   (e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND
>   KNOWLEDGE.-- A court may waive the same specialty and board certification
>   requirements for an expert testifying as to a standard of care if the court
>   determines that the expert possesses sufficient training, experience and knowledge
>   to provide the testimony as a result of active involvement in or full-time teaching
>   of medicine in the applicable subspecialty or a related field of medicine within the
>   previous five-year time period.

40 P.S. § 1303.512.

For the reasons previously discussed, Dr. Amin's practice of medicine for more than thirty years satisfies 40 P.S. § 1303.512(a). Additionally, because Dr. Amin is licensed in the states of Maryland, Pennsylvania, New Jersey, Louisiana, California, Illinois, and Indiana, see CV, he meets the requirements of 40 P.S. § 1303.512(b)(1). Dr. Amin's CV reflects that he has been practicing and teaching medicine since the early 1980's. See CV. Dr. Amin's testimony revealed that he has been actively practicing cardiology for at least five years and continues to teach. In addition to being an Attending Cardiologist at Easton Hospital, St. Luke's Hospital-Warren Canvas, and Northwood Surgery Center, he currently instructs internal medicine residents at Easton Hospital. Accordingly, the requirements of 40 P.S. § 1303.512(b)(2) are met. Dr. Amin is therefore competent to offer an expert medical opinion.

To determine whether Dr. Amin is competent to testify as to the standard of care, this Court must consider the remaining requirements of MCARE. Initially, this Court concludes that Dr. Amin is not competent to testify as to the standard of care for Dr. Robinson and/or Dr. Benek,[6] both podiatrists. There is no evidence in Dr. Amin's CV that he is familiar with the standard of care for podiatry or has any training in that field of medicine. Additionally, Dr. Amin testified at the evidentiary hearing that he does not know what the standards of care dictate

---

[6] Defendant's Motion states that Dr. Amin is opining, inter alia, on the standard of care for Dr. Benek, a podiatrist. See, e.g. Mot. 4. However, neither Dr. Amin's report nor the Complaint mentions Dr. Benek. Nevertheless, because this Court finds that Dr. Amin is not competent to testify as to the standard of care for a podiatrist, the Motion will be granted in this regard.

for a podiatrist, stating repeatedly that he is "not a podiatrist." Accordingly, Defendant's Motion will be granted to the extent it seeks to preclude Dr. Amin from testifying as to the standard of care for Dr. Robinson and/or Dr. Benek.

As to the applicable standard of care for Dr. Whitson, it is not clear from the record whether Dr. Whitson is certified in internal medicine or family medicine.[7] However, Defendant's counsel stipulated at the evidentiary hearing that "the standards of care for internal medicine are substantially similar to the standards of care for family medicine for purposes of the MCARE Act." Dr. Amin testified at the evidentiary hearing that he "practice[s] predominately cardiology but it involves internal medicine." When asked: "Doctor, do you know the difference in the standards of care for what an an internal medicine doctor does ... and a what a cardiologist does...?" Dr. Amin answered: "yes." He explained that in treating patients, "we approach the whole situation with a comprehensive approach." Dr. Amin gave two examples of how, as a cardiologist, he practices in internal medicine. First, Dr. Amin stated that "a patient with diabetes; if his diabetes is not controlled it could construe problems with cardiac care so I am going to advise him, to the extent that I know, with diabetes management: dietary habits, exercise." In another example, Dr. Amin explained that "for somebody who had lung infections and stuff or had problems with, things that would be associated with heart disease that could complicate his cardiac care I would advise him internally." When asked whether there is "any difference in how one should follow the practice standards and diagnose congestive heart failure between internal medicine and cardiology?" Dr. Amin answered: "no." Dr. Amin testified that would also be true in family practice. Dr. Amin also testified that he currently instructs internal

---

[7] Defendant successfully moved to quash Plaintiff's subpoenas and requests for information regarding Dr. Whitson, including his board certification records, curriculum vitae, and other qualification materials. See ECF Nos. 14, 16-18.

medicine residents at Easton Hospital. He stated that he takes courses and updates in the field of internal medicine. Moreover, Dr. Amin testified that "the department of cardiology is normally a division of internal medicine," and that cardiologists "supersede" internal medicine doctors, stating: "we are qualified as cardiologists but are still allowed to practice internal medicine."

In light of this testimony, this Court finds that Dr. Amin is "substantially familiar" with the standard of care applicable to Dr. Whitson and satisfies the requirements of 40 P.S. § 1303.512(c)(1). This Court further concludes that Dr. Amin "practice[s] in the same subspecialty or in a subspecialty which has a substantially similar standard of care" to Dr. Whitson's practice. See 40 P.S. § 1303.512(c)(2).[8] In light of the stipulation that the standards of care for internal medicine are substantially similar to the standards of care for family medicine for purposes of the MCARE Act, this Court finds that Dr. Amin's certification by the American Board of Internal Medicine satisfies the requirements 40 P.S. § 1303.512(c)(3).[9] Consequently, Dr. Amin is competent under MCARE to testify as to the standard of care for Dr. Whitson and Defendant's Motion is denied as to this issue.

## IV.    Conclusion

Dr. Amin, who is currently practicing internal medicine and cardiology, and has been practicing since 1980, and who has advanced training and teaching experience in the field, is qualified to testify as an expert medical witness in this case pursuant to Rule 702 of the Federal

---

[8] This Court finds that Dr. Amin also "possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period." See 40 P.S. § 1303.512(e).

[9] It is further determined that Dr. Amin's active cardiology practice, dating back to the early 1980's, regularly involves the practice of internal medicine. This experience, along with Dr. Amin's current instruction to internal medicine students, satisfies 40 P.S. § 1303.512(e).

Rules of Evidence.  Dr. Amin's opinion, which was reached after performing a clinical exam of Plaintiff and reviewing his complete medical records, is also reliable.  Additionally, because this Court finds that Dr. Amin's report is based on valid reasoning and reliable methodology and that his opinion testimony will assist the trier of fact, Defendant's Motion to preclude Dr. Amin from testifying on the basis of Rule 702 and <u>Daubert</u> is denied.

For these reasons, and in light of his license to practice medicine in seven states, Dr. Amin is also generally competent to testify under MCARE and Rule 601 of the Federal Rules of Evidence.

Dr. Amin is substantially familiar with the standard of care for an internal medicine doctor, which is the standard of care applicable to Dr. Whitson.  Dr. Amin, who is certified by the American Board of Internal Medicine, currently practices internal medicine as an Attending Cardiologist.  He also teaches internal medicine residents at Easton Hospital.  Dr. Amin is therefore competent to testify as to the standard of care for Dr. Whitson, and Defendant's Motion to preclude Dr. Amin's testimony regarding Dr. Whitson is denied.

However, because Dr. Amin is not familiar with the standard of care for podiatry and has no training or board certification in that field of medicine, Defendant's Motion will be granted to the extent it seeks to preclude Dr. Amin from testifying as to the standard of care for Dr. Robinson and/or Dr. Benek, both podiatrists.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*  
JOSEPH F. LEESON, JR.  
United States District Judge